GRANT C. JAQUITH
Acting United States Attorney

Fergus Kaiser
Special Assistant U.S. Attorney  c/o
Social Security Administration
Office of General Counsel
26 Federal Plaza, Room 3904
New York, NY 10278-0004
(212) 264-2049 fergus.kaiser@ssa.gov
Bar Roll No. 518633

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x
WILLIAM C. QUEAL JR.,

                      Plaintiff,

                                                       Civil Action No. 16-CV-1497

       v.


NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,        **STIPULATION FOR REMAND**

                      Defendant.
-------------------------------------------------------x

       **IT IS HEREBY STIPULATED** by and between Fergus Kaiser, Special Assistant United States Attorney, for Grant C. Jaquith, Acting United States Attorney for the Northern District of New York, attorneys for the defendant herein, and Peter L. Walton, Esq., Plaintiff's attorney, that the final decision of the Commissioner be, in part, reversed and the above

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit.  No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

1

captioned action be remanded to the Acting Commissioner of Social Security for further administrative proceedings pursuant to the fourth sentence of 42 U.S.C. § 405(g) (the "Social Security Act" or the "Act"). It is further stipulated by and between the parties that this reversal and remand shall only apply to Plaintiff's claim for benefits under Title XVI of the Social Security Act for the period beginning on April 19, 2012. As such, upon remand, the Commissioner shall only consider Plaintiff's claim for benefits under Title XVI of the Act for a period beginning on April 19, 2012. *See* Exhibit A (District Court's March 21, 2016 Decision and Order affirming Commissioner's final decision finding Plaintiff not disabled under the Act from October 1, 2004 through April 18, 2012).

**ORDERED** that the final decision of the Commissioner be and hereby is, in part, **REVERSED**, and the matter is **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) to the Defendant for further administrative action, and it is further **ORDERED** that the within matter be and hereby is **DISMISSED** in accord with the decision in *Melkonyan v. Sullivan*, 111 S. Ct. 2157 (1991).

**ORDERED** that, upon remand, the Commissioner shall only consider Plaintiff's claims for benefits under Title XVI of the Act for a period beginning on April 19, 2012.

**ORDERED** that the Commissioner's final decision dismissing Plaintiff's claims for benefits under Titles II and XVI of the Act for the period of October 1, 2004 through April 18, 2012 is hereby **AFFIRMED** and remains undisturbed by this Order.

Dated   August 16, 2017

|  |  |
|---|---|
| GRANT C. JACQUITH | PETER L. WALTON, ESQ. |
| Acting United States Attorney | Attorney for Plaintiff |

By:   */s/ Fergus Kaiser*　　　　　　By:   */s/ Peter L. Walton*
　　　Fergus Kaiser　　　　　　　　　　Peter L. Walton, Esq.
　　　Special Assistant U.S. Attorney　　Conboy, McKay, Bachman & Kendall, LLP
　　　Bar Roll No. 518633　　　　　　　407 Sherman Street
　　　　　　　　　　　　　　　　　　　Watertown, New York 13601
　　　　　　　　　　　　　　　　　　　Tel: (317) 788-5100
　　　　　　　　　　　　　　　　　　　Email: plwalton@cmbk.com

SO ORDERED:

ANDREW T. BAXTER
UNITED STATES MAGISTRATE JUDGE
　　　　Dated:  August 16, 2017

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

WILLIAM C. QUEAL, JR.,

                    **Plaintiff,**

          v.                            7:13-CV-516
                                            (FJS)

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**
_____

**APPEARANCES**                         **OF COUNSEL**

**CONBOY, McKAY,**            **PETER L. WALTON, ESQ.**
**BACHMAN & KENDALL, LLP**
407 Sherman Street
Watertown, New York 13601-9990
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**     **SERGEI ADEN, ESQ.**
**OFFICE OF REGIONAL**
**GENERAL COUNSEL – REGION II**
26 Federal Plaza – Room 3904
New York, New York 10278
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

Plaintiff William C. Queal, Jr. brought this action pursuant to the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c)(3) ("Act"), seeking judicial review of a final decision of the

EXHIBIT A

Commissioner of Social Security (the "Commissioner"), denying his application for a period of disability and disability insurance benefits ("DIB"), together with Supplemental Security Income ("SSI"). *See generally* Dkt. Nos. 1, 10. Currently before the Court are the parties' cross-motions for judgment on the pleadings under Rule 12(c) of the Federal Rules of Civil Procedure. *See* Dkt. Nos. 10, 11.

## II. PROCEDURAL HISTORY AND BACKGROUND

Plaintiff filed an application for benefits on September 30, 2006, alleging disability beginning on October 1, 2004. *See* Administrative Record ("AR") at 20. Plaintiff's application was denied; and, after a hearing, Administrative Law Judge ("ALJ") Marie Greener issued an unfavorable written decision on October 21, 2008. *See id.* at 47-56. The Appeals Council of the Social Security Administration ("Appeals Council") remanded; and, following a supplemental hearing, ALJ Greener issued a second unfavorable decision on October 26, 2009. *See id.* at 63-80. On September 21, 2011, the Appeals Council remanded again, directing that the case be assigned to a new ALJ. *See id.* at 172-75.

Plaintiff then had a hearing before ALJ Elizabeth W. Koennecke, who issued an unfavorable written decision on April 18, 2012. *See* AR at 20-41. In her written decision, the ALJ made the following findings "[a]fter careful consideration of all the evidence . . . ."

1) Plaintiff "met the insured status requirements of the Social Security Act through December 31, 2009."
2) Plaintiff "has not engaged in substantial gainful activity ("SGA") since October 1, 2004, the alleged onset date."
3) Plaintiff "has had the following severe impairments: polysubstance abuse and anxiety disorders (as variously characterized). If [Plaintiff] stopped the substance abuse, the remaining limitations would cause more than a minimal impact on [his] ability to perform basic work activities; therefore, [Plaintiff] would continue to have a severe impairment or combination of impairments."

EXHIBIT A

4) Plaintiff "does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. If [Plaintiff] stopped the substance use, [he] would not have an impairment or combination of impairments that meets or medically equals any of the impairments listed in 20 CFR Part 404, Subpart P, Appendix 1."

5) "After careful consideration of the entire record, the undersigned finds that, based on all of the impairments, including the substance use disorders, [Plaintiff] has the residual functional capacity to perform the physical demands of work at all exertional levels, [he] retains the ability (on a sustained basis) to frequently understand, carry out and remember simple instructions; to frequently make simple work-related decisions; to occasionally respond appropriately to supervision, co-workers, and usual work situations; and to occasionally deal with changes in a routine work setting. If [Plaintiff] stopped the substance use, [he] would have the residual functional capacity to perform the physical demands of work at all exertional levels. [Plaintiff] would retain the ability (on a sustained basis) to frequently understand, carry out and remember simple instructions; to frequently respond appropriately to supervision, co-workers, and usual work situations; and to frequently deal with changes in a routine work setting in the long-term absence of drug and alcohol abuse."

6) "Based on consideration of all of the impairments, including the substance use, [Plaintiff] is unable to perform any past relevant work. If [Plaintiff] stopped the substance use, [he] would continue to be unable to perform past relevant work."

7) Plaintiff "was born on September 15, 1971, and was a younger individual age 18-49, on the alleged disability onset date."

8) Plaintiff "obtained his General Education Development (GED) diploma and is able to communicate in English."

9) Plaintiff's "acquired job skills do not transfer to other occupations within the residual functional capacity defined above. If [Plaintiff] stopped the substance use, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that [Plaintiff] is "not disabled," whether or not [he] has transferable job skills."

10) "Considering [Plaintiff's] age, education, work experience, and residual functional capacity based on all of the impairments, including the substance use disorders, there are no jobs that exist in significant numbers in the national economy that [Plaintiff] can perform."

11) "If [Plaintiff] stopped the substance use, considering [his] age, education, work experience, and residual functional capacity, there would be a significant number of jobs in the national economy that [he] could perform."

12) "The substance use disorder is a contributing factor material to the determination of disability because the claimant would not be disabled if he stopped the substance use. Because the substance use disorder is a contributing factor material to the determination of disability, [Plaintiff] has

not been disabled within the meaning of the Social Security Act at any time from the alleged onset date through the date of this decision."

*See id.* (citations omitted).

The ALJ's decision became the Commissioner's final decision on March 26, 2013, when the Appeals Council denied Plaintiff's request for review. *See* AR at 10-13. Plaintiff then commenced this action on May 3, 2013, filing a supporting brief on October 30, 2013. *See* Dkt Nos. 1, 10. Defendant filed a response brief on December 16, 2013. *See* Dkt. No. 11.

In support of his motion, Plaintiff advances two main arguments. First, Plaintiff argues that the ALJ erroneously gave his treating physicians' opinions less than controlling weight and that, as a result, there was not substantial evidence to support the ALJ's findings with respect to whether his impairment met or medically equaled those listed in 20 C.F.R. Pt. 404, Subpt. P, §12.04, and with respect to his residual functional capacity. Second, Plaintiff challenges the ALJ's conclusion that his substance abuse was a contributing factor material to the determination of disability. *See generally* Dkt. No. 10, Pl.'s Br.

### III. DISCUSSION

#### A. Standard of review

Absent legal error, a court will uphold the Commissioner's final determination if there is substantial evidence to support it. *See* 42 U.S.C. § 405(g). The Supreme Court has defined substantial evidence to mean "'more than a mere scintilla'" of evidence and "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quotation omitted). To be eligible for SSI, a claimant must show that he suffers from a disability within the meaning of the Act. The Act defines "disability" as an inability to engage in substantial gainful activity ("SGA") by reason of a

EXHIBIT A

medically determinable physical or mental impairment that can be expected to cause death or last for twelve consecutive months. *See* 42 U.S.C. § 1382c(a)(3)(A). To determine if a claimant has sustained a disability within the meaning of the Act, the ALJ follows a five-step process:

> 1) The ALJ first determines whether the claimant is engaged in SGA. *See* 20 C.F.R. §§ 416.920(b), 416.972. If so, the claimant is not disabled. *See* 20 C.F.R. § 416.920(b).
>
> 2) If the claimant is not engaged in SGA, the ALJ determines if the claimant has a severe impairment or combination of impairments. *See* 20 C.F.R. § 416.920(c). If not, the claimant is not disabled. *See id*.
>
> 3) If the claimant has a severe impairment, the ALJ determines if the impairment meets or equals an impairment found in the appendix to the regulations (the "Listings"). If so, the claimant is disabled. *See* 20 C.F.R. § 416.920(d).
>
> 4) If the impairment does not meet the requirements of the Listings, the ALJ determines if the claimant can do his past relevant work. *See* 20 C.F.R. § 416.920(e), (f). If so, he is not disabled. *See* 20 C.F.R. § 416.920(f).
>
> 5) If the claimant cannot perform his past relevant work, the ALJ determines if he can perform other work, in light of his RFC, age, education, and experience. *See* 20 C.F.R. § 416.920(f), (g). If so, then he is not disabled. *See* 20 C.F.R. § 416.920(g). A claimant is only entitled to receive benefits if he cannot perform any alternative gainful activity. *See id*.

For this test, the burden of proof is on the claimant for the first four steps and on the Commissioner for the fifth step, if the analysis proceeds that far. *See Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998) (quotation omitted).

**B. ALJ's weighing of treating physician opinions**

The Commissioner's regulations instruct that

[g]enerally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a

EXHIBIT A

> detailed, longitudinal picture of your medical impairment(s) . . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques *and is not inconsistent with the other substantial evidence in your case record*, we will give it controlling weight.

20 C.F.R. § 404.1527(c)(2) (emphasis added). When affording a treating physician's opinion less than controlling weight, the ALJ "will always give good reasons" for doing so. *Id.* To that end,

> [t]he factors that must be considered when the treating physician's opinion is not given controlling weight include: "(i) the frequency of examination and the length, nature, and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; and (iv) whether the opinion is from a specialist."

*Brickhouse v. Astrue*, 331 F. App'x 875, 877 (2d Cir. 2009) (quoting *Clark v. Commissioner of Social Sec.*, 143 F.3d 115, 118 (2d Cir. 1998)); *see also* 20 C.F.R. § 404.1527(c)(1)-(6). In particular, treating physician opinions are "'not afforded controlling weight where . . . the treating physician issued opinions that are not consistent with other substantial evidence in the record, such as the opinions of other medical experts.'" *Petrie v. Astrue*, 412 F. App'x 401, 405 (2d Cir. 2011) (quoting *Halloran v. Barnhart*, 362 F.3d 28, 32 (2d Cir. 2004) (*per curiam*)). "The report of a consultative physician may constitute such substantial evidence." *Id.* (quoting *Mongeur*, 722 F.2d at 1039).

In this case, Plaintiff argues that the ALJ erred by affording less than controlling weight to the opinions of Drs. Camillo, Michaels, Savino, and Kimball. However, the ALJ discussed the opinions of other medical experts whose opinions contradicted those of the treating physicians. *See* AR at 30-32. Additionally, with respect to Dr. Camillo's opinion, the ALJ noted that Dr. Camillo is Plaintiff's former treating psychiatrist. *See* AR at 33. The ALJ thoroughly discussed a number of case notes from Dr. Camillo's clinic that were inconsistent with his

- 6 -

EXHIBIT A

opinion, including a mental status examination. *See id.* The ALJ's written decision also considered other facts from the record that were inconsistent with Dr. Camillo's opinion, such as Plaintiff's self-reports of only "very episodic instances of isolation" together with his daily activities including going to a diner for coffee daily, going to the YMCA twice per week, and missing his appointments only infrequently. *See id.* The Court finds that the ALJ offered sufficient reasons for affording Dr. Camillo's opinion less than controlling weight.

With respect to Dr. Michaels' opinion, the ALJ noted that Dr. Michaels is Plaintiff's former psychiatrist and that the treating relationship lasted 28 days. *See* AR at 35. The ALJ further noted that Dr. Michaels' opinion was provided less than two weeks after Plaintiff's discharge from Clifton Springs Hospital & Clinic and before Plaintiff's longest period of sobriety, during which he displayed significant improvement in function. *See id.* Additionally, the ALJ discussed a number of progress notes from Dr. Michaels' clinic that were inconsistent with her opinion, including Plaintiff's awareness of coping skills and progress with decreasing worry and projection. *See id.* Finally, the ALJ considered evidence from Plaintiff's later medical records at Mercy Center and Community Clinic that tended to show that Plaintiff would "get out of his apartment on most days" in order to socialize, shop, attend church, volunteer, and attend medical appointments. *See id.* The Court finds that the ALJ offered sufficient reasons for affording Dr. Michaels' opinion less than controlling weight.

With respect to Dr. Savino's opinion, the ALJ identified Dr. Savino as Plaintiff's treating psychiatrist. *See* AR at 35. The ALJ then discussed the extent to which she found Dr. Savino's opinion to be inconsistent with the record. For example, the ALJ noted that Plaintiff received his highest Global Assessment of Function ("GAF") score to date at his initial interview at the Community Clinic. *See id.* at 36. Additionally, the ALJ noted that, although Dr. Savino opined

- 7 -

EXHIBIT A

that Plaintiff's functioning was limited by insomnia, Plaintiff's treatment for insomnia was essentially minimal. *See id.* Perhaps most importantly, the ALJ noted that Dr. Savino's assessment took place less than one month after Plaintiff suffered a major relapse of drug and alcohol use in December of 2011. *See id.* The Court finds that the ALJ offered sufficient reasons for affording Dr. Savino's opinion less than controlling weight.

Finally, Plaintiff argues that the ALJ erred by failing to address Dr. Kimball's opinion as that of a treating source. The Court finds this argument to be without merit. The record shows that Dr. Kimball performed a consultative examination on Plaintiff on April 29, 2009, through the New York State Department of Temporary and Disability Assistance. *See* AR at 572. Dr. Kimball noted in his report that he had seen Plaintiff for an evaluation at Mercy Center. *See id.* at 573. However, the same report also stated that Plaintiff "sees Dr. Camill[o] and nurse, Joyce Combs, RN, is his counselor" when he attends outpatient services as Mercy Center. *See id.* at 575. Thus, it appears that Dr. Kimball saw Plaintiff once at the Mercy Center, was not his regular care provider there, and then later examined him while working for New York State in a different capacity. The Court finds that the ALJ did not err by declining to find a treatment relationship between Plaintiff and Dr. Kimball under those circumstances.

In summary, for the above-stated reasons, the Court finds that the ALJ properly applied the treating physician rule with respect to the opinions of Drs. Camillo, Michaels, Savino, and Kimball.[1] *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (instructing that "'[a]n ALJ does not have to state on the record every reason justifying a decision'" (quoting *Brault*, 683 F.3d at 448)).

---

[1] Additionally, to the extent that Plaintiff argues that the ALJ's residual functioning capacity analysis was erroneous based upon her weighing of the treating physician opinions, the Court's findings in this section render any such argument academic.

EXHIBIT A

## C. ALJ's Listing 12.04 finding

Under Listing 12.04, Affective Disorders, a claimant is presumptively disabled when he meets his burden of showing that he suffers from a "disturbance of mood, accompanied by a full or partial manic or depressive syndrome." Listing 12.04. "The required level of severity . . . is met when the requirements in both [paragraphs] A and B are satisfied[:]"

> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> > 1. Depressive syndrome characterized by at least four of the following:
> >     a. Anhedonia or pervasive loss of interest in almost all activities; or
> >     b. Appetite disturbance with change in weight; or
> >     c. Sleep disturbance; or
> >     d. Psychomotor agitation or retardation; or
> >     e. Decreased energy; or
> >     f. Feelings of guilt or worthlessness; or
> >     g. Difficulty concentrating or thinking; or
> >     h. Thoughts of suicide; or
> >     i. Hallucinations, delusions, or paranoid thinking; or
> >
> > 2. Manic syndrome characterized by at least three of the following:
> >     a. Hyperactivity; or
> >     b. Pressure of speech; or
> >     c. Flight of ideas; or
> >     d. Inflated self-esteem; or
> >     e. Decreased need for sleep; or
> >     f. Easy distractibility; or
> >     g. Involvement in activities that have a high probability of painful consequences which are not recognized; or
> >     h. Hallucinations, delusions or paranoid thinking; or
> >
> > 3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);
>
> AND
>
> B. Resulting in at least two of the following:
> > 1. Marked restriction of activities of daily living; or
> > 2. Marked difficulties in maintaining social functioning; or
> > 3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration; . . .

Listing 12.04. In this context, a "marked" limitation is one that is "more than moderate but less than extreme . . . such as to interfere seriously with your ability to function independently, appropriately, effectively, and on a sustained basis." Listing 12.00(C) (citations omitted). It is the claimant's burden to show that his impairment or combination of impairments meets "'*all* of the specified medical criteria'" in the Listing. *Lamond v. Astrue*, 440 F. App'x 17, 20 (2d Cir. 2011) (quoting *Sullivan v. Zelby*, 493 U.S. 521, 530, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)); *see also* 20 C.F.R. §§ 404.1525(c)(3), 416.925(c)(3).

In this case, Plaintiff argues that "[t]he comprehensive medical evidence has shown, and the ALJ does not dispute, that Plaintiff satisfies [paragraph] (A)" of Listing 12.04. *See* Dkt. No. 10, Pl.'s Br., at 20. He then argues that his impairments amount to marked limitations in all four of the paragraph B criteria, even absent his substance abuse. *See id.* at 21.

The ALJ made no express finding with respect to the paragraph A criteria. However, she did find that Plaintiff failed to meet the paragraph B criteria. *See* AR at 28. In particular, the ALJ found that, absent his substance abuse, Plaintiff "has mild restriction of activities of daily living; mild difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence or pace; and no episodes of decompensation." *See id.* In support of these findings, the ALJ noted that Plaintiff successfully obtained a driver's license, that he worked for several years as a direct care aide, requiring significant mental demands, and that he reported to multiple care providers that he was "able to perform a range of daily activities independently, including caring for his personal needs, cooking, doing general cleaning and doing his own laundry." *See id.* at 29.

Additionally, the ALJ concluded that Plaintiff's "problems in social functioning occurred in limited circumstances" when he abstained from substance abuse from August of 2009 through the end of November 2011.[2] *See* AR at 33. In particular, she noted that Plaintiff reported increased socialization with "church activities, going to the YMCA, going to a diner for coffee, going tanning, and attending Narcotics Anonymous ("NA") and Alcohol[ics] Anonymous ("AA") group meetings on a regular basis"; that he did his own grocery shopping at times; that he was able to establish a new group of friends; that he reported in March, 2012 that he usually got along with family and friends; and that a consultative medical examiner noted that Plaintiff's manner of relating, social skills, and overall presentation were adequate, that he was able to maintain appropriate eye contact, and that there were no problems with his speech or personal hygiene. *See id.*

Finally, the ALJ emphasized the fact that Plaintiff was able to live on his own and manage his own medications upon his discharge from the supportive apartment program at Transitional Living Services of Northern New York. *See id.* at 35. The Court finds that this evidence constitutes such relevant evidence as a reasonable mind might accept as adequate to support a conclusion that Plaintiff did not meet the criteria listed in paragraph B of Listing 12.04. *See Richardson*, 402 U.S. at 401.

**D. Substance abuse as a materially contributing factor**

The Act precludes disability benefits where drug and alcohol abuse is a "contributing factor material to" the determination of disability. *See* 42 U.S.C. §§ 423(d)(2)(C),

---

[2] The ALJ noted that her RFC analysis "reflects the degree of limitation" that she found in the mental function analysis. *See* AR at 29. Accordingly, the Court considers the RFC analysis as instructive in assessing which evidence the ALJ considered in her mental function analysis.

EXHIBIT A

1382c(a)(3)(J). The relevant inquiry in this context is "whether we would still find you disabled if you stopped using drugs or alcohol." 20 C.F.R. §§ 404.1535(b)(1), 416.935(b)(1). In other words, "[i]f we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability." 20 C.F.R. §§ 404.1535(b)(2)(i), 416.935(b)(2)(i). The claimant bears the burden to prove that his drug addiction or alcoholism was not material to the determination of disability. *See Cage v. Comm'r of Soc. Sec.*, 692 F.3d 118, 123 (2d Cir. 2012) (citations omitted).

In this case, Plaintiff argues that his treating physicians and other medical sources assessed extreme and marked limitations even during period of sobriety. In her written decision, however, the ALJ found that Plaintiff "has not been a reliable historian or particularly truthful about the extent of his substance abuse, as noted by his medical professionals." *See* AR at 31. For example, the ALJ noted that Plaintiff reported in March 2012 that he had last used in 2009, when an inpatient hospital record from late 2011 showed a positive drug screen. *See id.* The ALJ further noted that Plaintiff had reported drinking 12 to 20 beers every day until December 3, 2011. *See id.* In so finding, the ALJ applied the correct two-step credibility analysis. *See id.* at 31; *Meadors v. Astrue*, 370 F. App'x 179, 183 (2d Cir. 2010).

Additionally, the ALJ in her written decision found that "the record establishes a clear period of sustained sobriety" from the fall of 2009 through late 2010, with only minor relapses in 2011. *See* AR at 37. The ALJ based this finding upon records indicating that Plaintiff's mother, who previously had rejected him in part because of his substance abuse, had renewed their relationship. *See* AR at 31-32. According to the ALJ, "[t]his suggests that [Plaintiff's] mother believed that he had sustained some period of sobriety." *See id.* Having established a significant

period of sobriety, the ALJ found that she was able to "clearly separate" Plaintiff's substance abuse from his other limitations. *See id.* at 32.

The ALJ then found that Plaintiff "has experienced a significant improvement in his mental function with prolonged abstinence from drug or alcohol use . . . ." *See id.* In particular, the ALJ noted that Plaintiff was able to control his own medication beginning in January of 2010. *See id.* The written decision also noted "no significant decline in the claimant's functioning" during this time, with increasing GAF scores throughout 2011. *See id.* at 32-33. Finally, the ALJ noted that Plaintiff was able to live alone beginning in August of 2011. *See id.* at 33. According to the ALJ, this evidence showed "gradual improvement in mental function over the length of the period of sobriety." *See id.* at 36.

For these reasons, the Court finds that there is substantial evidence in the record to support the ALJ's finding that Plaintiff's substance abuse was a contributing factor material to the determination of disability.[3] *See Richardson*, 402 U.S. at 401.

## IV. CONCLUSION

Having reviewed the entire record in this matter, the parties' submissions, and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Plaintiff's motion for judgment on the pleadings, *see* Dkt. No 10, is **DENIED**; and the Court further

---

[3] Moreover, the Court rejects Plaintiff's argument that the ALJ should have made a finding with respect to whether Plaintiff could have controlled his substance abuse. Plaintiff's authority for this argument, *Williams v. Callahan*, 30 F. Supp. 2d 588 (E.D.N.Y. 1998), merely instructs the ALJ to determine "whether plaintiff has a disability independent of . . . drug addiction." *Id.* at 594 (citation omitted). The Court finds that the ALJ did so here.

EXHIBIT A

**ORDERS** that Defendant's motion for judgment on the pleadings, *see* Dkt. No. 11, is **GRANTED**; and the Court further

**ORDERS** that the Commissioner's decision is **AFFIRMED** and Plaintiff's complaint is **DISMISSED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in favor of Defendant and close this case.

**IT IS SO ORDERED.**

Dated: March 21, 2016
      Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Judge

- 14 -

EXHIBIT A